EZRA PARKHURST *v.* JOSIAH F. MUIR.

In 1839, A., being the owner of a mill site, sold half of it to B., and A. and B. agreed to erect a factory thereon, and to carry on a manufacturing business in partnership. No written articles of partnership were made; nor was any time fixed for the duration of the partnership. A. and B. mortgaged the property to raise money to put up the building required, and about $3,000 remained due on the mortgage at the time of the filing of the bill. B. had given A. a mortgage on the half he purchased, for $400 of the purchase money; all which remained due at the filing of the bill. In October, 1848, B. filed a bill, charging that A. excluded him from taking any part in the business; and refused to give him any information as to his sales and collections; and had sold goods of the partnership in his own name, and applied the proceeds to his own use; and refused to dissolve and come to a settlement; and that on a just settlement a considerable balance would be due him, B.; and prayed a dissolution and account, and a Receiver. The bill did not charge that A. was unable to respond.

The answer denied the exclusion; stated that, in March preceding the filing of the bill, the parties had a settlement, by which the complainant acknowledged himself indebted to the defendant in $609 92, beyond the said mortgage debt of $400, and gave his note therefor to the defendant, no part of which had been paid; and that it was thereupon agreed by complainant that defendant should collect from the partnership business sufficient to pay the said note; that he, accordingly, after said settlement, sold goods of the partnership, (stating particularly what goods,) and charged himself with them on the books of the partnership; and that the complainant's share of the net profits of the partnership since said settlement (giving the receipts and payments of the partnership since that time) was not sufficient to pay the said note; and denied that he ever refused to come to a settlement, and stated that he has been at all times, and is ready to account; and denied any design to act unfairly.

A motion for a Receiver was denied.

On the 18th October, 1848, Ezra Parkhurst exhibited his bill, stating, that in or about May, 1839, he entered into an agreement with Joseph F. Muir to form a partnership with him in the business of carrying on a saw mill and manufacturing paper, in the name and style of Parkhurst & Muir, on a mill site on the Passaic river, in the township of New Providence, which at that time belonged to the said Muir; which agreement was not reduced to writing, and was to the effect following: That the complainant should purchase half of the said mill site and real estate thereunto appertaining, from the said Muir, for $2,250, and that the complainant and said Muir should each furnish half of the

capital necessary to build a paper mill on the said premises and carry on the saw mill and paper making business, and each of them to share equally in the profits and loss of said business; and that each of them should own the half of the said mill site and real estate, and each be at half the costs and expense of building a paper mill and making the improvements and repairs necessary to carry on the said business; and no time was agreed upon for the limitation or continuance of the said partnership.

That the said partnership business was entered upon, and has ever since continued to be carried on by the complainant and said Muir, under and in pursuance of the said agreement, except when interrupted by Muir, as in the bill after stated; no other agreement having been made between them in relation to the said partnership.

That, immediately after they entered into the said partnership, the complainant paid the said $2,250, in the manner agreed upon between them, to the said Muir, and they erected a paper mill on the said premises, and put the necessary machinery therein; and, in the course of several months after entering into said partnership, they commenced manufacturing paper in the said mill, and ever since that time have continued to carry on the said business together, until August last; since which time Muir has prevented the complainant from participating in the said business, and still persists in excluding the complainant from participating in the transaction of the said partnership business, and refuses to consult with the complainant in relation thereto, and refuses to give the complainant any information of his transactions of the partnership business and of his sales of partnership property and collection of partnership debts. That during the last winter he was very much dissatisfied with the manner in which Muir was conducting the said business, and so informed him.

That Muir has taken the books of account and of the business transactions of the partnership from the paper mill, where they belonged and had ever been kept, and carried them to his own house, against the consent and remonstrance of the complainant; and refuses to bring them back to the said mill, and to permit

the complainant to have access to the same, against the repeated request of the complainant.

That Muir has lately sold and sent away from the mill, on his individual account, a quantity of the paper made at the said mill, without the consent or approbation of the complainant, and marked the same with his own name, instead of the name of the firm, as they had always been in the habit of doing; and he marked the said paper with his own name because he had sold it for his individual benefit; but without the knowledge or consent of the complainant.

And the complainant charges that Muir has recently applied to his own use large sums of money from the receipts and profits of the said business, greatly exceeding the proportion thereof to which he was entitled, and refuses to account to the complainant for the same. And the complainant believes and charges, that if Muir is permitted to remain in possession of said mill, and to sell the partnership property and collect the partnership dues, the complainant will be deprived of his share and interest in the partnership property, and be compelled to pay the partnership debts.

That Muir declares to some persons that he has dissolved the said partnership; and at other times declared that he has agreed with the complainant to carry on the business on terms by which each partner is to use the mill on his own account and interest; all which the complainant charges to be untrue.

That Muir, on the 19th September, 1848, addressed and sent to the complainant a note in writing, dated that day, in which he proposes to the complainant to keep on in business with him for one year longer, and on the 12th of October, 1848, addressed and sent to the complainant a note, dated that day, in which he alleges that he is not in partnership with the complainant in making pasteboard, and that he never intended to be; whereas the complainant charges, that they have been in partnership in the said paper mill since 1839, as above stated, and that the partnership has never been dissolved; and Muir refuses to dissolve the partnership and come to a fair and just settlement with the complainant of their partnership accounts.

That since Muir has declared that the partnership was dis-

solved, and within a month past, he has purchased stock in his own name and mixed it with partnership stock and materials at the mill, which he is now manufacturing and appropriating to his own account, against the consent and remonstrance of the complainant ; and has lately bought, on the partnership account, and put in the mill, unnecessary and useless machinery, against the consent and remonstrance of the complainant.

That Muir has boasted that he kept in his possession the said partnership books, and that the complainant knows nothing about the situation of their business affairs ; and the complainant believes, from his conduct, that it is his intention, if possible, to compel the complainant to sell out to him the complainant's interest in the partnership property at a sacrifice, and through fraudulent means and by concealing from the complainant the true condition of their partnership affairs, to possess himself of all the partnership property.

The complainant charges, that on a true settlement of said accounts it would appear that a considerable balance is due him from Muir in respect of said partnership dealings ; but nevertheless Muir is collecting the partnership debts and applying the same to his own use ; which he is enabled to do by means of his possession of the books of account and of the partnership transactions ; whereby the balance due from him will be increased, to the great loss and injury of the complainant.

That he has from time to time, by himself and his agents, applied to Muir, and hath requested him to come to a full and fair account in respect of said partnership transactions, and to agree to a dissolution of the partnership. But that he refuses to agree to an amicable and mutual dissolution of the partnership and to come to a full and fair settlement of said accounts and to pay the complainant the share of the moneys and profits due the complainant in respect of the said partnership, and to permit the complainant to participate in the said partnership transactions.

The complainant charges, that since March last, Muir has collected from $3,000 to $5,000 of the partnership debts, and has appropriated to his own use more than $1,000 over what he was entitled to for his share of the same.

That within a month past Muir has refused to come to a mu-

tual and amicable dissolution, though he was requested to do so by an agent of the complainant sent to him for that purpose; and has refused and continues to refuse to permit the complainant to participate with him in the possession of said paper mill, and in the transaction of the said partnership business; and within a month past has declared that he was advised to turn the complainant out of possession of said mill, and that he intended to do so, and that he did not mean to let the complainant have anything to do with the said business.

The bill prays, that the partnership may be dissolved, and that an account may be taken of the partnership dealings and transactions; and that Muir may be decreed to pay the complainant what, if anything, shall be found to be due to him, the complainant being willing and offering to pay Muir what, if any thing, shall be found due to him from the complainant; and that in the mean time Muir may be injoined from collecting any of the dues, moneys, rights or effects of the partnership, and from contracting any partnership debts, and from selling, transferring, or disposing of any of the effects of the partnership; and that a Receiver may be appointed for the benefit of the creditors of the partnership and of the complainant and Muir; and for further relief.

Affidavits were annexed to the bill.

On the reading of the bill, an injunction was allowed.

On the 3d of November, 1848, a motion for a Receiver was made, upon notice.

The answer of the defendant was read in opposition.

The answer admits the partnership for carrying on a saw mill and making pasteboard, and not paper; though the firm afterwards entered into the manufacture of paper; that the agreement forming the partnership was not in writing, and was to the effect stated in the bill; and that no time was agreed upon for the limitation or continuance thereof; and that said partnership business was entered upon as stated in the bill.

The defendant denies that the said partnership business was in

anywise interrupted by him; and that no other agreement except the agreement in the bill mentioned was ever entered into between him and the complainant in reference to the partnership.

He says that the $2,250 agreed to be given to him by the complainant for the half of said mill site and real estate was secured to be paid as follows : he and the complainant, on or about May 16, 1839, gave to Jonathan M. Meeker *their joint* bond for the payment of $3,700, in instalments, with interest payable annually ; the payment of which bond was secured by a mortgage executed by him and the complainant and his wife upon the whole of said real estate of the said partnership ; and the sum of $400 was secured to be paid to this defendant by the bond of said Parkhurst, dated May 16, 1839, with interest; the payment of which last mentioned bond was secured by a mortgage executed by said Parkhurst and wife to this defendant upon said Parkhurst's undivided half of said partnership real estate.   That on the said bond and mortgage given to Meeker there has been paid, out of the funds of the partnership, all the interest due  thereon up to May 1, 1848, and $1,300 of principal; and that no other payments have been made thereon.   That on the said bond and mortgage given by Parkhurst to this defendant no money has been paid for principal or interest.

He admits that he and the complainant erected upon the premises a pasteboard mill and put the necessary machinery therein; and, in the course of several months after entering into the partnership, he and the complainant commenced manufacturing pasteboard.

That the complainant did not comply with his agreement in the bill mentioned to pay half of the cost of *putting* up the necessary improvements on said premises ; but that, on the contrary, this defendant paid on that account considerably more money than the complainant.

He says that on or about August 16, 1848, he and the complainant did agree to make sale of all and singular the said mills belonging to the partnership; and that, in pursuance of said agreement, and with the concurrence of the complainant, the same were, with all and singular the machinery in the mills and a set of rollers belonging to the partnership and then being at

Newark, at the shop of Hewes & Phillips, machinists, and also all the material or unwrought stock and tools and certain other personal property then belonging to the partnership, on the 31st of August, 1848, struck off and sold at public vendue, to John J. Henderson, for $8,500, he being the highest bidder therefor. That the complainant was present at said sale, took part therein, and assisted in fixing the terms or conditions thereof.

That, within the time in said conditions mentioned, he duly tendered to said Henderson a deed duly executed by him, this defendant, and his wife, for his share of said real estate and machinery in said mill; and that Henderson refused to receive the same.

He says he is informed and believes that the complainant, about the time of said sale and after the same had been agreed upon as aforesaid, stated that said Henderson would own the property in company with the complainant. And he has also been informed and believes that the complainant entered into an agreement with one David Burnet to lease to him, Burnet, after the said sale should have taken place, the saw mill in the bill mentioned. And the defendant says he is advised by his counsel and submits, that by the said sale of the said partnership property and effects the partnership was dissolved, and the business thereof at an end, except so far as regarded the collection of dues, the payment of debts, the sale of the residue of the stock, and the adjustment of the accounts of this defendant and the complainant in respect thereto, or the winding up of the affairs of the partnership.

He denies that he has ever, at any time, in any way prevented the complainant from participating in the partnership business, or ever in anywise excluded or attempted to exclude the complainant from participating in the transaction thereof, or refused to consult with him in relation to the partnership business, or refused to give the complainant any information of his, this defendant's, transaction of the partnership business or of his sales of the partnership property and collection of partnership debts. But, on the contrary, he says he has at all times during the continuance of the partnership, and subsequently to the dissolution thereof as aforesaid, been ready and willing to give to the com-

plainant all information he might require of this defendant concerning said partnership affairs, and to give the complainant a voice in all the partnership transactions and a full and equal participation with this defendant therein to all intents and purposes, and to communicate to the complainant any information he might desire concerning the partnership affairs and business, and of this defendant's conduct therein in every respect. And he says that he never, except by the bill of complaint, so far as he can now recollect, was informed by the complainant that the complainant was, or at any time had been, dissatisfied with the conduct of this defendant about said partnership business and affairs.

He denies that he has taken the books of account and of the business transactions of the partnership from the paper mill, where, as the bill alleges, they belonged, to his own house, against the consent or remonstrance of the complainant; or that he refuses to bring said books back to the mill and to permit the complainant to have access to them.

He says that, from the commencement of the business of the partnership to about December, 1842, the said firm had but one book of partnership accounts or transactions; which book was, at the commencement of the partnership, kept in said pasteboard mill; and, there being no office in said mill, was then and for some time thereafter kept in different places in said mill, there being no fixed place for keeping it: but it was often to be found lying on bales of stock in said mill, or on heaps of unwrought material or of pasteboard. That, about six years ago, the complainant, in a conversation by him had with this defendant, referred to the loose and unsafe manner in which said book was kept in said mill, and suggested to this defendant that, lest it should accidentally be destroyed, this defendant should remove it to this defendant's dwelling house, about 200 yards distant from the mill, and keep it there; and this defendant did so, and kept it at his said house ever since, to this time, except when it has been brought forth as occasion required.

He says that, about December, 1842, another book of accounts and partnership transactions was commenced; and after that, another book was commenced; and that said three books are all

the books of account of the firm. That the last two books have never been kept in said mill, nor in any other place except this defendant's dwelling house; and that the complainant has at all times had free access thereto, and has never, in anywise, to the knowledge of this defendant, been prevented from examining or using the same; and that all the said books were placed in this defendant's dwelling house with the complainant's full concurrence; and that the complainant never requested this defendant to remove or suffer said books to be removed from said dwelling house to said mill, or to any other place, to be there kept, instead of at this defendant's dwelling house.

He says that, on the 31st of March, 1848, he and the complainant did account with each other of and concerning their said partnership business theretofore transacted, and their respective transactions thereof and therein; and, on a full, careful and accurate examination of their said accounts of the business and transactions of the partnership from the commencement thereof to that time, the same were adjusted to the satisfaction of this defendant and the complainant, the complainant then expressing his entire satisfaction therewith, the complainant was found indebted to this defendant in $609 92; of which sum $403 was due this defendant for moneys advanced beyond his share for building said mill, and interest thereon; and the residue was due this defendant from the complainant on account of this defendant's share of the profits of the partnership business up to said March 31, 1848; for which sum of $609 92 the complainant then gave his note to this defendant, of that date, payable one day after date; which note is still in this defendant's possession, no payment either of principal or interest having been made. And the complainant then gave to this defendant, in a book kept by this defendant of moneys received and paid out by this defendant on account of the partnership, a written statement under the complainant's hand acknowledging that he had on that day settled all accounts on said book of this defendant and for the building of the mill, and that he, the complainant, then found a balance due this defendant of $609 92, for which he, the complainant, had on that day given his note, at one day from that date, and that said settlement settled for all charges the com-

plainant then had against this defendant and said firm of Park-hurst & Muir. And the complainant at the same time, in the same book, gave this defendant another written statement under his hand to the effect that all the accounts in said book were set-tled up to said March 31, 1848, by the complainant's giving said note for $609 92 to this defendant; and also another *statement* in writing, immediately following the last mentioned statement in said book, in the words and figures or of the tenor and to the effect following, that is to say : also all accounts up to this date, March 31, 1848; which statement was signed by this defendant and the complainant.

The defendant further says, that it was expressly agreed between him and the complainant, on the said 31st of March, 1848, that this defendant should thereafter take from the partnership business sufficient moneys to pay the said note ; and that he has been informed and believes that the complainant has, since said settlement, declared that this defendant must take his pay for the said note out of the said partnership property.

He says that, since said Aug. 31, 1848, he has sent away and sold on his individual account from said mill the following goods of the property of the partnership : 2,252 pounds of trunk boards, which were sold to H. N. Peters, of Newark, on or about Sept. 16, 1848, on a credit of six months, at $4 50 per hundred pounds; 2,307 pounds of hardware paper, worth at this time $146, sent on or about Sept. 29, 1848, to John Campbell & Co., of Newark, to be sold on the account of this defendant ; but whether the same has been sold or not this defendant does not know ; and 547 pounds of trunk boards, sold on or about Oct. 5, 1848, to Cornelius Walsh, of Newark, on this defendant's account, for $24 62; and that besides the above he has not sold or sent away to be sold from said mill, or any other place, any of the stock or goods belonging to the partnership.

He says that all the said paper and pasteboard so sold and sent away to be sold on his account was duly, at the several times when the same was sold or sent away to be sold, charged by him against himself in the partnership books, at the full prices thereof; and that the said paper sent to Campbell & Co. to be sold was marked with

the letter M. ; and said pasteboard was not marked in any way to designate from whom it came, or by whom it was sent.

He says that, believing the partnership to have been dissolved by the sale of said partnership real estate and other partnership property, on said 31st of Aug. 1848, and the complainant having expressly agreed, as aforesaid, with this defendant, that this defendant should pay himself the amount of the said note of $609 92 out of said partnership property, this defendant sold and sent away to be sold the said paper and pasteboard in good faith, and intending to account for the same to the complainant in the final adjustment of their said partnership affairs.

That, since the said 31st of March, 1848, he has received of the moneys belonging to the partnership $3,825 37, or thereabouts, and has paid out on account of said partnership $3,515 56, or thereabouts, since that day, leaving $308 81, or thereabout, excess of such receipts over such expenditures ; a just and true account of which said receipts is annexed to this answer, marked Schedule A. ; and a just and true account of said payments is also annexed to this his answer, marked Schedule B. That, in addition to said moneys mentioned in Schedule A., he received on account of the partnership business, on or about May 16, 1848, of the firm of C. & H. Lee, their due bill for $29 12; on the 15th of Aug. 1848, of the firm of Leggett & Brothers, their note for $250 ; which said due bill and note are yet unpaid and are now in his possession, no part of the money due thereon having at any time been received by him.

That the complainant's share of the net profits of the partnership business which have accrued since March 31, 1848, is not sufficient to pay the amount of principal and interest moneys due this defendant on said note of $609 92.

He says it is true that, since said 31st of Aug. 1848, he has declared that the partnership has been dissolved; but has never so declared prior to that time.

He denies that he ever said he had agreed with the complainant to carry on said partnership business on terms by which each partner was to use the mill on his own account and interest ; but he says that he did, since said 31st of August, state, in effect, that he, this defendant, was going to run said mill for one month, and

and suffer the complainant to run it the succeeding month, and so on, each running the mill on his own account every alternate month. And he says that, shortly after he commenced to use the mill on his own account, he was informed that the complainant had said, in effect, that such an arrangement, whereby each partner should run the mill on his own account every alternate month, was well enough, except that this defendant should have suffered the complainant to have the use of the mill for the first month, and that the arrangement, should have been that each partner should run the mill on his own account every alternate week.

He admits that he addressed two letters to the complainant; and that in the letter dated Sept. 19, 1848, he may, as in the bill alleged, have proposed to the complainant to continue the partnership for still another year; and that in the letter dated Oct. 12, 1848, he may have made the allegations in the bill mentioned; but he denies that he intended to convey in said last mentioned letter the idea that this defendant had never been in partnership with the complainant, or any similar meaning.

He says that the complainant and he have been in partnership in said business since 1839, and until Aug. 31, 1848, when, as he is advised by his counsel and submits, the partnership was dissolved by the sale of the partnership real estate and property hereinbefore mentioned and stated to have been made on that day. That no appeal has ever been made to him by the complainant, or on his behalf in any wise since said 31st of March, 1848, for any dissolution of the said partnership, or for a settlement of said partnership accounts; and he denies that he has ever refused in any way to come to a just and fair settlement with the complainant of the said partnership accounts; but, on the contrary, he says that he has ever since said settlement made between them on said 31st of March, 1848, been ready at all times to render an account of such portion of the partnership business as has been under his management and control.

He says that after the refusal of said Henderson to take said deed for his part of the partnership property and real estate, he continued to carry on business in said mill on the partnership account, with the sole design of turning to the best advantage of

the partnership the unfinished material belonging to the partnership and then being in the mill. But finding, about the 4th of Oct., 1848, that the design of working up the said material was not likely to prove profitable to the partnership, on account of the nature of said stock or material, the same being very hard and not easily worked by the engines in the mill except when mixed with other and more pliable stock, and when not so mixed the same required three times as much work to convert it into pasteboard as when mixed with other stock as aforesaid; and not being willing to make purchases of other stock on the partnership account, said partnership then being, as he conceived and still conceives, dissolved, he purchased stock in his own name, and commenced the manufacturing thereof in said mill on his own account, as he is advised by his counsel he might properly do under the circumstances of the case.

That since the 4th October, 1848, he has used, for his own account, of the partnership property, 280 pounds of trunk boards that had been spoiled in the finishing, worth about 2 1-4 cents a pound, and which he believed could never be sold for the purpose for which they were made. That said 280 pounds of trunk boards were taken by him the day before the injunction in this case was served on him, and part thereof used on that day and part on the day of such service and prior thereto. That he intended to charge himself with it on the books of the partnership when he should have used it, but on account of the filing of complainant's bill has omitted to do so. That on the said 4th October, 1848, there remained in the mill twenty-one hundred, one quarter and fifteen pounds of unwrought material hereinbefore mentioned; and that he did then charge himself with the same on the books of the partnership, at the full value thereof, to wit, $48 11, and has used about one-third thereof. That he is now, and has at all times since taking said pasteboard and stock or materials, been ready to account to the complainant for the same.

That, besides said 280 pounds of boards and said unwrought material so taken by him, he has in no wise mixed with his private stock, or used on his own account, any of the stock or material of the partnership. And that the complainant has never

at any time expressed dissent to such use of said 280 pounds of boards and said stock or material, or either of them, or remonstrated in any way with him on account of such use thereof.

That he lately purchased for said paper mill a grind stone, of the weight of 682 pounds, and which cost $6 82; that he paid for the same with his own private funds; and that, after it was so purchased and paid for, he, believing it to be necessary to the mill, and that it would, when placed therein, be for the equal benefit of himself and the complainant as tenants in common of the mill, charged it to said partnership on his own private book of receipts and expenditures on account of the partnership. And that, except said grindstone, he has lately purchased no machinery for said mill except one roller, bought by him about Oct. 12, 1848, in his own name and on his own account and credit. That he has lately made some slight and very necessary repairs to the machinery in the mill; and that the expense of such repairs, with the cost of the grindstone, will not exceed $15, as he verily believes.

That, to replace a piece of the machine banding accidentally broken in the mill, he did, on or about Oct. 7, 1848, purchase another piece of banding on the account of the said Parkhurst & Muir, at a cost of $3 27, which he has charged among the payments in said Shedule B. And that he is ready and willing to account to the complainant for all of said expenditures so made by him on account of said repairs to said machinery and for said grindstone and banding. And the complainant has never in any way remonstrated with him against such expenditure for repairs to said machinery or for said grindstone or banding; and that the complainant has never, himself or by his agents, spoken to him in any way on the subject thereof.

He denies that he has ever in any way boasted that he kept said books of said partnership in his possession and that the complainant knew nothing about the situation of the affairs of the partnership. He says he has never, as he verily believes, made any statement to the effect that the complainant was ignorant of the affairs of said business, whereby this defendant had any advantage of said complainant.

He says he has never conceived the design or had the intention

of compelling the complainant to sell out to him the complainant's interest in said partnership property at a sacrifice, or through fraudulent means and by concealing from the complainant the true and exact situation of the partnership affairs to possess himself of all of said partnership property.   But he says that, on the contrary, he has at all times been ready and willing to give the complainant a full statement of his acts and deeds in and about said partnership business ; and he has kept a just, true and full account thereof in the books of the partnership and said book of said defendant kept by him as aforesaid and containing an account of his expenditures and receipts on account of said partnership business.   And he has never conceived the design or intended in any way to act unjustly or unfairly towards the complainant in or about said partnership business or property.

He denies that upon a settlement of the partnership accounts it would appear that any balance whatever is due from him to the complainant in respect of said partnership dealings ; but says he verily believes that on a just and true account of said partnership dealings since March 31, 1848, when the said partnership accounts were settled as aforesaid, it would appear that he has not received from the partnership business sufficient, over and above his share thereof, to pay the said note of $609 92, given by the complainant to him as aforesaid.

He says that, since said settlement on the 31st of March, 1848, the complainant has collected and received, in cash, divers sums of money belonging to the partnership, amounting to $145 or thereabouts ; and did also, as he is informed and believes, receive, on or about Oct. 4, 1848, on account of moneys due the partnership from the firm of John Campell & Co., the note of said firm, at six months, for $100 ; and this defendant verily believes, that with the exception of $5 paid by complainant to one Isaac Pryer, the complainant has applied said $145, so collected and received by him, to his own individual use and benefit ; and this defendant is ignorant what disposition the complainant may have made of the said note of $100 received by him from Campbell & Co.

He denies that he has at any time in anywise prevented or en-

deavored to prevent the complainant from using the mill or occupying it in common with him, otherwise than as before set forth.

He says it may be true that he has said he was working the mill on his own account and had been advised that he had a right to do so until he had been paid the amount due him from the complainant; yet he denies that he has ever, according to the best of his knowledge, recollection or belief, said that he was working the mill and collecting the debts of the partnership to pay the amount due him on said partnership account for his share thereof. But he submits that under the said agreement made between him and the complainant on said 31st of March, 1848, in reference to said promissory note of $609 92, and under the circumstances herein before mentioned, he was fully at liberty to have worked said mill and to have collected said debts, for the purpose of realizing the amount of said note.

That it may be true that he has said that he had been advised to turn the complainant out of possession of said mill; *but he* denies that he ever said he intended to do so and did not mean to let complainant have anything to do with said business, or that he used words to that effect, or in anywise declarative of the intention to turn complainant out of said mill or not to permit complainant to have any participation in said partnership business.

He denies that he has declared, at any time since the commencement of the partnership up to this time, that he was never in partnership with the complainant, or has used words to that effect or of that tenor; and he says he has no recollection of ever having said that he had dissolved said partnership; and he verily believes he has never said so. But he admits that since said 31st August, 1848, he may have said that they, the complainant and this defendant, had dissolved said partnership, or used words to that effect; this defendant having reference to the dissolution by the sale of said partnership property and real estate.

He says that, since March 31, 1848, the complainant has spent but a very small part of his time in said mill and about the business of the partnership; and the time so spent by complainant would not in all, as this defendant believes, amount to more than 40 days. That, since said 31st of March, 1848, al-

most the whole burden of said business has rested on this defendant ; as well the superintending of the mill as the making sale of the partnership goods ; and that he has given to said business his whole and undivided time and attention.   And he submits that on the taking of the accounts of the partnership business since said settlement thereof on said 31st of March, 1848, he is entitled to receive an extra allowance in consideration of such care, time and attention so given and bestowed by him since said settlement, taken in connection with the fact that the complainant has since then neglected the same and has not given the time and attention thereto which he ought to have done.

*F. B. Chetwood* and *Wm. Pennington* for the motion.

*T. Runyon* and *A. Whitehead*, contra.   They cited 3 *Kent's Com.*, page 38, and sec. 328 ; 18 *Ves.* 280 ; 8 *Ib.* 318.

THE CHANCELLOR.   I see no ground for the appointment of Receiver in this case.
Motion denied.